## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

MARK TIBBS, #182979, SID #182979,          *

Petitioner,          *

v.          *          Civil Action No. JKB-15-3214

WARDEN,[1]          *
MATTIE MEEHAN, Parole Commissioner,
SHEILA SULLIVAN, Parole Commissioner,          *

Respondents.          *

## MEMORANDUM

This matter is before the court on Mark Tibbs's petition for writ of habeas corpus (ECF 1), which was supplemented at direction of the court. ECF 2, 3.  Counsel for respondents, former Warden Gregg Hershberger, and Parole Commissioners Mattie Meehan and Sheila Sullivan, have filed a response and a motion to dismiss for failure to state a claim or, in the alternative, motion for summary judgment supported by affidavits and verified exhibits. ECF 10.  Tibbs, who is self-represented, filed an opposition. ECF 14.

After considering the pleadings, exhibits, and applicable law, the court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2014).  For reasons to follow, the court will dismiss the petition without prejudice for lack of exhaustion, dismiss Warden Hershberger, dismiss the claims for monetary damages against the Commissioners Meehan and Sullivan (collectively, "the Commissioners"), and grant summary judgment in favor of the Commissioners.

## BACKGROUND

Tibbs is in the custody of the Maryland Division of Correction and presently incarcerated

---

[1] Tibbs supplemented the petition to specify his intent to name Gregg Hershberger as a defendant (ECF 3), and the docket will be amended accordingly.

at the Maryland Correctional Institution - Hagerstown.[2] He claims he was improperly denied parole on August 27, 2015, because his prison file contained information which "falsely labeled" him as a gang member. ECF 1 at 1. He faults defendants for considering this information during his parole hearing. *Id* at 2.

As relief, Tibbs requests removal of his name from all state, federal, and local gang lists, a new parole hearing, compensatory damages of $100,000, punitive damages of $100,000, and injunctive relief to include "[a] findings no checks and balances exist in the Department of Public Safety and Correctional Services" and "[t]ransparent rules and regulations need to be created which adhere to constitutional rights; while simultaneously advocating penological interests and safety." ECF 3 at 12.

Tibbs's petition challenges the denial of his parole and seeks habeas relief. It also sets forth causes of action for violation of civil rights. Accordingly, it shall be treated as a hybrid petition for writ of habeas corpus under 28 U.S.C. § 2241 and a civil rights complaint pursuant to 42 U.S.C. § 1983. *See Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) (ruling a challenge to state procedures denying parole could be brought under § 1983, because plaintiff would be entitled, at most, to a new parole hearing, not a reduced sentence); *see also Brown v. Johnson*, 169 F. App'x 155, 157 (4th Cir. 2006) (unpublished) (prisoner challenges to parole guidelines should proceed under § 1983); *Overman v. Beck*, 186 F. App'x 337, 338 (4th Cir. 2006) (unpublished) (Section 1983 is the appropriate cause of action for inmate challenges to "policies and procedures applicable to their parole reviews, [but] not the denial of parole itself").

## FACTS

Tibbs is serving a life sentence imposed for first-degree murder and three concurrent 20 year sentences, all consecutive to his life sentence, for robbery with a deadly weapon,

---

[2] Richard Dovey is presently warden at MCI-H. https://www.dpscs.state.md.us/locations/mcih.shtml.

conspiracy, and a hand gun offense.[3]   He has been reviewed for parole on four occasions. ECF 10-1 (Affidavit of Mattie Meehan); ECF 10-7. The Maryland Parole Commission ("MPC") conducted two administrative reviews of Tibbs's parole file in 1991 and 1996. *Id*; *see also* ECF 10-4, ECF 10-5.  He was considered for parole on July 25, 2001, at which time the Commission decided to rehear his parole application in July of 2013. ECF 10-6.  Tibbs's parole hearing was not scheduled until 2014.   Tibbs indicated he wanted to postpone his hearing, and later, on December 1, 2014, requested a parole hearing.  ECF 10-7, 10- 8.

On August 27, 2015, Commissioners Meehan and Sullivan considered Tibbs's request for parole.  The Commissioners have submitted affidavits and attest that in considering Tibbs for parole, they reviewed his entire parole file.  They did not review Tibbs's Division of Correction (DOC) base file. ECF 10-1, 10-14. They attest their review was consistent with MPC practice. *Id*.

The Commissioners explain that before an inmate is considered for parole, the DOC prepares a pre-parole investigation, called a case plan, for Commission review.  Tibbs's case plan, dated June 19, 2015, included notes that on March 11, 2011, he was "flagged as a security threat group member. BGF [Black Guerilla Family]." ECF 10-1, 10-9 at 1, 10-14, 10-15 at 1. The case plan notes for March 19, 2013, read that there was "no change" to this information.  *Id*. The case plan notes dated June 19, 2015, however, read in relevant part: "Inmate denies any gang affiliation and there are no such alerts." *Id*.[4]  Notably, the case plan does not include gang

---

[3]   The term of imprisonment also included a three-year sentence, beginning on August 7, 1986, for violating probation on the underlying crime of attempted robbery with a deadly weapon.  ECF 10-3.

[4]   In 2013, Tibbs filed suit under 42 U.S.C. § 1983, to challenge his designation by prison officials as a gang member. *Tibbs v. Hershberger, et al*., Civil Action No. JKB-13-13-2340 (D. Md.).  The Court granted summary judgment in favor of defendants and dismissed Tibbs's request for injunctive relief as moot after finding the gang flag on his file had been removed from the DOC electronic data system and he was listed as inactive in DOC intelligence records.   The United States Court of Appeals for the Fourth Circuit affirmed the decision. *Tibbs v Hershberger, et al*, No. 14-7332 (4th Cir. Jan. 21, 2015).

member affiliation among the aggravating risk factors used for parole consideration.  ECF 10-9 at 5, 6; ECF 10-15 at 5, 6.

On June 15, 2015, Tibbs was provided his case plan. The Notice of Parole Hearing signed by Tibbs on June 15, 2015, outlined for him the factors and information considered in determining parole. ECF 10-10.   Tibbs indicated that he understood and agreed with the information in the case plan.  ECF 10-10, ECF 10-11.

The Commissioners observe the case plan they reviewed is dated June 19, 2015. They posit the June 15, 2015, note was not in the case plan when Tibbs reviewed and indicated his agreement with the information.  ECF 10-1, ECF 10-15.

Meehan and Sullivan deny the reference in Tibbs's case plan to past gang involvement caused them to deny parole. The Commissioners provide the following identical statements in their declarations:

> In considering Mr. Tibbs for parole, I fully understood that although the DOC had flagged him as a member of the Black Guerilla Family ("BGF") in 2011, he is not currently a member of a gang or a security threat group.  During the hearing, an issue arose concerning DOC labeling Mr. Tibbs as a BGF member in 2011.  Mr. Tibbs credibly explained that the DOD had labelled him in error, and that the DOC had removed the BGF label after he litigated the issue.
>
> The DOC's labeling of Mr. Tibbs as a member of BGF in 2011 played no role in my decision to refuse him parole.  In reaching that decision, I considered all of the statutory factors listed in Correctional Services Article § 7-305.[5] I based my decision to refuse Mr. Tibbs parole on his poor disciplinary history, the nature of the crime, his limited lack of remorse, and the impact of his crimes on the victim.  As indicated in the written parole decision:

---

[5] Md. Ann. Code. Corr. Servs. § 7-305 mandates consideration of the following factors when determining whether an inmate is suitable for parole: the circumstances surrounding the crime; the physical, mental, and moral qualification of the inmate eligible for parole; the progress of the inmate during confinement, including the academic progress; whether there is a reasonable probability that the inmate, if released on parole, will remain at liberty without violating the law; whether release on parole is compatible with the welfare of society; an updated victim impact statement or recommendation prepared under Section 4--504(d) of this subtitle;  recommendations made by the sentencing judge information presented to a commission member at a meeting with victim; and testimony presented to the commission by the victim or the victim's representative under 7-801 of this article.

> A refusal of parole is given based upon the offender's unsatisfactory adjustment since his last hearing (4 significant infractions with a 104 (threatening an officer) adjudicated in 2/2015).   Although the offender now admits to his involvement in this senseless act, panel believes his remorse and insight is limited.   Victim impact was also considered in this decision.   All factors considered.

ECF 10-1 ¶¶ 13-14; ECF 10-14 ¶¶ 9-10.

On September 14, 2015, Tibbs wrote a letter to David Blumberg, Chairman of the Parole Commission in an effort to appeal the decision to refuse him parole. ECF 10-13.[6]   The letter was referred to Meehan and Sullivan, who declined to alter their determination since Tibbs's past gang affiliation played no role in their decision.   ECF 10-1 ¶ 15, 10-14 ¶ 11.   The Commissioners noted the impact of the crime on the victim and his family was especially egregious and the oral presentation by the victim's son during the parole hearing was compelling.   ECF 10-1 ¶ 16, 10-14 ¶ 12.[7]

Tibbs does not refute the Commissioner's affidavits with declarations or verified evidence.   In his opposition, Tibbs instead contends the Commissioners used "the extrinsic factor" of his "false gang labeling" to question him during his parole hearing and avers this "false" label prejudiced the outcome of his hearing.   He argues the "false labeling" should never have been raised at his parole hearing. ECF 14 at 4-5.   Further, he contests the gravity of his disciplinary infractions, describing them as "nothing major" as none involved assault on an officer or staff member.   *Id.*

---

[6]   Maryland parole decisions issued by two commissioners are final, and may not be appealed to the Parole Commission.   Md. Ann. Code. Corr. Servs. §7-307.   Requests for reconsideration are referred to the commissioners who rendered the parole decision at issue.   COMAR 12.08.01.19.a(3); 12.08.01.23.B.

[7]   The parole hearing was not recorded.   ECF 14-1.

## DISCUSSION

As noted, this is a hybrid action under 28 U.S.C. § 2241 and 42 U.S.C. § 1983. Respondents move for dismissal of the petition for lack of exhaustion or in the alternative for lack of merit.  As to Tibbs's claims under 42 U.S.C. § 1983, Respondents move for dismissal or alternatively for summary judgment in their favor.

### I.      Claims For Habeas Relief

Respondents urge dismissal of the petition for lack of exhaustion and procedural default. They further argue that even if the petition were properly exhausted and the claims raised before the state courts prior to filing in this district, the petition lacks substantive merit.

### A.   Exhaustion

Respondents seek dismissal of Tibbs's claims for habeas relief for failure to exhaust state remedies.  Before filing an application for writ of habeas corpus under 28 U.S.C. § 2241, an inmate must exhaust his available remedies. *See Timms v. Johns,* 627 F.3d 525, 531 (4th Cir. 2010) (requiring exhaustion of available remedies before § 2241 petition could be considered). In the federal habeas context, a state prisoner must first present each of his claims to the state courts with jurisdiction to consider them.  The state courts are to be afforded the first opportunity to review federal constitutional challenges to state convictions in order to preserve the role of the state courts in protecting federally guaranteed rights. *See Preiser v. Rodriguez*, 411 U.S. 475 (1973).   The petitioner bears the burden of demonstrating that state remedies have been exhausted.  *Mallory v. Smith*, 27 F.3d 991, 994-95 (1994). Tibbs does demonstrate that he has filed an action in state court challenging the parole decision.[8]

---

[8] On August 1, 2014, Tibbs filed a case in the Circuit Court for Baltimore City seeking review of an Inmate Grievance Office (IGO) decision, which had found his administrative grievance against Meehan and Sullivan was outside IGO jurisdiction  ECF 10-20, ECF 10-21, ECF 14-4.

Additionally, respondents assert the habeas claim is barred by the doctrine of procedural default. Where a petitioner fails to comply with a state procedural rule, that failure provides adequate and independent grounds for the state court to deny relief, and federal habeas review is barred if the state expressly relies on procedural default unless cause and prejudice, or actual innocence, is shown. *See Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 86 (1977). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of the petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995); *Bostick v. Stevenson*, 589 F.3d 160, 164 (4th Cir. 2009). Tibbs does not claim cause or prejudice or actual innocence to excuse procedural default.

As respondents note, administrative mandamus rules govern actions for judicial review of parole decisions in Maryland. *See* Md. Rule 7-401(a) (providing for review of quasi-judicial orders where review is not expressly authorized by law). Tibbs has not filed a petition for administrative mandamus in circuit court, and if he were to attempt to do so at this time, the petition would be untimely. ECF 10-1 at 10-11.

The state courts have not had an opportunity to review the parole decision. Therefore, these claims are unexhausted and procedurally defaulted. The petition will be dismissed.[9] In any event, even if the claims were fully presented to the state courts, they are not cognizable on federal habeas review for reasons discussed to follow.

### B.  Grounds for Habeas Relief

A writ of habeas corpus is available to a prisoner "in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2241(c)(2); *Rose v. Hodges*, 423 U.S. 19,

---

[9]  A certificate of appealability shall not issue in this case.

21 (1975).   Tibbs claims Maryland courts have held "inmates have a liberty interest in a right to parole through the statutes and regulations governing parole. ECF 14 at 5.  An error of state law, however, does not provide grounds for federal habeas relief.  *See Estelle v. McGuire,* 502 U.S. 62, 67-68 ("It is not the province of a federal habeas court to reexamine state court determinations on state law questions.").  Moreover, it is well-settled that a Maryland inmate has no colorable federal constitutional interest in parole or in a parole rehearing. *See Bryant v. Maryland*, 848 F.2d 492 (4th Cir. 1988); *see also Swarthout v. Cooke*, 562 U.S. 216 (2011) (no liberty interest in parole unless arising from statutes or regulations); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7 (1979); (same); *Patuxent Institution Bd. of Review v. Hancock,* 329 Md. 556, 583, 620 A.2d 917 (1993) (a liberty interest in parole in Maryland does not arise until inmate signs the Order for Parole to indicate acceptance of the conditions of the parole); *McLaughlin–Cox v. Maryland Parole Commission*, 200 Md. App. 115, 24 A.3d 235 (2011) (Maryland statutes governing parole consideration do not create a liberty interest protected by the Fifth and Fourteenth Amendments to the U.S. Constitution).

Nor does Tibbs present a viable claim for abridgement of a constitutional provision or federal statute.  The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of ... liberty ... without due process of law."  A liberty due process claim must identify a protected liberty interest. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).

The Constitution does not create a protected liberty interest in the expectation of early release on parole. *Greenholtz*, 442 U.S. at 10 ("There is no constitutional or inherent right of a convicted person to be constitutionally released before the expiration of a valid sentence."); *see also Jago v. Van Curen*, 454 U.S. 14, 18 (1981) (mutually explicit understanding that inmate

would be paroled does not create liberty interest). Without a protected liberty interest in parole, a prisoner typically cannot mount a challenge to a state parole review procedure on procedural or substantive due process grounds. *See Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224. (1976).

The petition fails to show the Commissioner's denial of parole violated due process or other constitutional provision or federal law, and it will be denied and dismissed.

## II.    Claims Under 42 U.S.C. § 1983

Next, respondents move for dismissal or, in the alternative, summary judgment as to the claims raised against them under 42 U.S.C. § 1983.  In this analysis, the court recognizes that Tibbs is a self-represented litigant and shall afford liberal construction to his pleadings.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (directing courts to hold pro se pleadings to a "less stringent standard" than those of an attorney").

### A.  Standard of Review

### 1.  Motion to Dismiss

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable [.]" *Twombly*, 550 U.S. at 556.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557).

### 2. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit. Fed. R. Civ. P. 56(c)(4).

### B.  Claims Against Hershberger

Warden Hershberger moves for dismissal of the claims against him because there is no allegation that he was personally involved in any aspect of Tibbs's parole review. Tibbs offers no rebuttal. ECF 14.  Tibbs's only mention of Hershberger is in the caption of the hybrid petition.

Section 1983 requires demonstration of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. 42 U.S.C. § 1983 (imposing liability on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...."); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd. on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977) (in order for an individual defendant to be held liable pursuant to 42 U.S.C. § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights ..."). Nor does Tibbs claim Warden Hershberger is liable under principles of supervisory liability. *See Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984) (liability of supervisory officials in a § 1983 action "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'")). Accordingly, Hershberger shall be dismissed.

### C.  Claims for Monetary Damages Against the Commissioners

Next, the Commissioners move for dismissal of claims for monetary damages against them for decisions rendered in their quasi-judicial function in considering applications for parole. As parole officials, the Commissioners perform a quasi-judicial function and are entitled to

absolute immunity from personal liability. *See Pope v. Chew*, 521 F.2d 400, 405–06 (4th Cir. 1975) (parole officials involved in the quasi-judicial function of making recommendations regarding parole or pardons are entitled to immunity from damages in a civil rights action). Such immunity is necessary because "the duty of such officials and judges is often the same: to render impartial decisions in cases and controversies that excite strong feelings because the litigant's liberty is at stake ... [and] such officials and judges both face the same risk of constant unfounded suits by those disappointed by the parole board's decisions."); *Mowatt v. U.S. Parole Comm'n*, 815 F. Supp. 2d 199, 206 (D.D.C. 2011) (internal quotation marks and citations omitted). Consequently, Tibbs's claims for damages against the Commissioners will be dismissed.[10]

### D.  Parole Review Claims Under § 1983

The gravamen of Tibbs's claims is that he was denied his right to due process  when  the Commissioners used "false information" concerning his gang involvement to deny him parole. Tibbs's position is without merit.  As discussed, Tibbs does not have a liberty interest in early release on parole on which he may premise a claim for violation of due process.  *See supra* pp. 8-9.

A constitutional claim may be stated, however, under certain limited circumstances involving false and prejudicial information in prison records.  *See Paine v. Baker,* 595 F.2d 197, 201 (4th Cir. 1979).  In *Paine*, the United States Court of Appeals for the Fourth Circuit held that a state prisoner has a federal due process right to have "prejudicial erroneous information

---

[10] In some circumstances, the Eleventh Amendment also bars suits against a state official sued in his or her official capacity.  If the action is essentially to recover money from the state, an official may raise Eleventh Amendment immunity as a defense because the state is the real party in interest. *See Will v. Michigan Dept. of  State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). However, the state official remains subject to liability if the plaintiff seeks to enjoin the official from engaging in unconstitutional conduct, alleges that the official's violation is ongoing, and requests only prospective relief. To the extent Tibbs is seeking damages from the Commissioners in their official capacities, they are immune from liability under the Eleventh Amendment.

expunged from [his] prison files" where he shows that (1) the information is in his file, (2) the information is false, and (3) the information is relied upon to a constitutionally significant degree. *Id.*  As a jurisdictional prerequisite, an inmate who believes that his or her file contains false information must notify prison authorities in writing, specifying the information he believes is false and the true facts. *Id.* at 203.  To assess whether there has been reliance to a constitutionally significant degree on this information, the court must first examine the nature of the adverse administrative decision made on the basis of erroneous information, *i.e.,* whether it impacts a colorable liberty interest. *Paine*, 595 F.2d at 202.  Second, the court must review the nature of the false information. *Id.* If the error is more significant than a mere technicality—for example, an error involving the inmate's past criminal record or his record of disciplinary offenses while in prison—"then it may reasonably be relied on and fundamental fairness requires its expunction." *Id.*

Tibbs has disputed information in his file as false, and it was removed by the DOC from its files. *See supra* note 3. The case plan prepared for his parole hearing accurately reflected that he had been flagged as a gang member in 2011, but was no longer so designated.  During his parole hearing on August 27, 2015, the Commissioners found Tibbs credibly explained that the gang label was assigned in error and it has been removed. ECF 10-1 ¶ 1; ECF 14 ¶ 9. Commissioners Meehan and Sullivan each attest that the DOC's labeling of Tibbs in 2011 as a member of the Black Guerilla Family prison gang played no role in the decision to refuse him parole. *Id.*  Specifically, they state:

> "Mr. Tibbs' parole consideration was not affected in any respect by the fact that in the past, the DOC mistakenly flagged him as a member of the BGF.  In addition, I fully understand that Mr. Tibbs is not a member of BGF or any other gang."

ECF 10-1 ¶ 17; ECF 10-14 ¶ 13.  Instead, the decision to refuse parole was based on Tibbs's

"poor disciplinary history, the nature of the crime, his limited lack of remorse, and the impact of his crimes on the victim."  ECF 10-1 ¶ 14; ECF 14 ¶ 10.

Given the above, it is clear neither Meehan nor Sullivan relied on the prior gang label to a constitutionally significant degree in the decision to deny Tibbs's parole on August 27, 2015. They addressed the information in the case plan at the parole hearing, finding Tibbs's explanation of the mistaken label and its removal credible. The Commissioners  instead based their decision on statutorily enumerated factors for considering whether an inmate suitable for parole: namely, disciplinary history, the nature of the offense, whether remorse is shown, and victim impact. The Commissioners did not rely on false information to a constitutionally significant degree, or more accurately, they did not rely on false information at all. The reference to the former gang label did not prejudice their parole decision, and there was no constitutional violation.  Accordingly, Commissioners Meehan and Sullivan are entitled to summary judgment in their favor as a matter of law.

## CONCLUSION

For the foregoing reasons, the petition, treated as a hybrid petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a complaint pursuant to 42 U.S.C. § 1983, will be dismissed and denied as to all claims for habeas corpus relief.  A certificate of appealability shall not issue as to the habeas claims.  As to Tibbs's claims under 42 U.S.C. § 1983, the court will dismiss Warden Hershberger, dismiss the claims for monetary damages against Commissioners Meehan and Sullivan, and grant summary judgment in favor of the Commissioners.   A separate order follows.

May 12, 2016                              _____/s/_____
Date                                      James K. Bredar
                                          United States District Judge